UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THOMAS C.,[1]                             )
                                          )
                    Plaintiff,            )
                                          )
              v.                          )        No. 1:19-cv-03915-MJD-SEB
                                          )
ANDREW M. SAUL,                           )
                                          )
                    Defendant.            )


**ENTRY ON JUDICIAL REVIEW**


Claimant Thomas C. requests judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Social Security

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").  *See*

42 U.S.C. §423(d).

**I.  Background**

On February 22, 2016, Claimant applied for DIB, alleging an onset of disability as of

September 23, 2015.  [Dkt. 9-7 at 2 & 5.]  Claimant's date last insured was December 31, 2017.

[Dkt. 9-8 at 2.]  Claimant's application was initially denied on May 5, 2016, and then again upon

reconsideration on July 29, 2016.  [Dkt. 9-4 at 51 & 68.]  Administrative Law Judge Gladys

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

1

Whitfield ("ALJ") held hearings on Claimant's application in April 2018 and August 2018.  [Dkt. 9-2 at 34 & Dkt. 9-3 at 2.]  On September 14, 2018, the ALJ issued her determination that Claimant was not disabled.  [Dkt. 9-2 at 25.]  The Appeals Council then denied Claimant's request for review on July 14, 2019.  *Id.* at 2.  Claimant timely filed a Complaint with this Court on September 13, 2019, seeking judicial review of the Commissioner's decision.  [Dkt. 1.]

## II.  Legal Standards

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). In reviewing a claimant's appeal, the Court reverses only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence, but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 23, 2015, through his last insured date of December 31, 2017. [Dkt. 9-2 at 16.] At step two, the ALJ found that Claimant had the following severe impairments: degenerative disc disease/post laminectomy syndrome (cervical with radiculopathy and lumber spine), morbid obesity, depression and anxiety, and chronic pain. *Id.* At step three, however, the ALJ found that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." *Id.* at 17. In making this determination, the ALJ considered Listings 1.04 (Disorders of the Spine), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive

disorders), and Social Security Ruling (SSR) 02-1p (Obesity). *Id.* The ALJ then analyzed

Claimant's RFC and concluded that he had the RFC to perform a range of sedentary work as

follows:

> [T]he claimant is capable of lifting and carrying up to ten 10 pounds occasionally
> and less than 10 pounds frequently. The claimant is capable of standing and
> walking (in combination), two (2) hours and sitting six (6) hours, all in an eight (8)
> hour workday. The claimant is capable of bilateral fingering, handling, and feeling
> continuously, and operating foot controls and bilateral reaching in all directions
> frequently, with the exception of overhead reaching, which he is limited to no more
> than occasionally. Additionally, the claimant is capable of occasional balancing
> and stooping. The claimant can never kneel, couch, or crawl. The claimant can
> occasionally climb ramps and stairs, but is unable to climb ladders, ropes or
> scaffolds. The claimant's work may not require operation of a commercial vehicle
> or any exposure to unprotected heights and hazardous moving machinery, with no
> more than occasional exposure to humidity/wetness, extremes of heat or cold.
> Finally, the claimant is unrestricted in his ability to do simple, routine and repetitive
> tasks in a work environment requiring no more than occasional contact with the
> general public, coworkers, and supervisors, and no teamwork, tandem tasks or fast-
> paced production.

*Id.* at 19. In determining the RFC, the ALJ concluded that Claimant's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the

claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record

for the reasons explained in this decision." *Id.*

At step four, the ALJ found that Claimant was unable perform his past relevant work as a

maintenance machine repair person. *Id.* at 24. The ALJ proceeded to step five, considering

testimony from a vocational expert ("VE"), who indicated that an individual with Claimant's age,

education, work experience, and RFC would be able to perform several jobs that exist in

significant numbers in the national economy, such as document preparer and final assembler. *Id.*

at 25. Based on these findings, the ALJ concluded that Claimant was not disabled. *Id.*

## IV.  Discussion

The central issue in this case is whether substantial evidence supports the ALJ's determination that Claimant is not disabled.  Claimant advances three arguments for reversing the ALJ's decision: (1) the ALJ erred by failing to account for her own findings of moderate limitations in concentration in the RFC assessment and in the hypothetical question she posed to the VE; (2) the ALJ failed to provide a "good reason" for dismissing Claimant's treating physician opinion; and (3) the ALJ failed to assess the socially-limiting opinions of the state agency psychologists and the consultative examiner.  The arguments are addressed, in turn, below.

### A.  Moderate Limitations in Concentration

Claimant contends the ALJ did not appropriately address his limitations in maintaining concentration in the hypothetical question posed to the VE and in the RFC determination. Specifically, Claimant asserts that the ALJ's RFC determination failed to consider how his ability to sustain concentration for an extended period of time is unrelated to his ability to engage in an activity.  Claimant further argues that the ALJ failed to include the concentration-related "check box" limitations assessed by the state agency psychologists in the VE hypothetical and in the RFC determination.  In response, the Commissioner contends that the ALJ provided the state agency psychologists' findings partial weight and formulated a mental RFC determination that is consistent with the narrative summaries.

At step three, with regard to concentration, persistence, or maintaining pace, the ALJ found:

> [T]he claimant has moderate limitation.  As stated above, the claimant graduated from high school and has taken college courses.  However, substantial evidence supports that the claimant has no more than moderate difficulties with concentration.

[Dkt. 9-2 at 18.]  In the RFC, the ALJ found that Claimant was "unrestricted in his ability to do simple, routine and repetitive tasks in a work environment requiring no more than occasional contact with the general public, coworkers, and supervisors," and Claimant could not perform work involving "teamwork, tandem tasks or fast-paced production."  *Id.* at 19.  The ALJ's hypothetical question posed to the VE was consistent with this RFC:

> [P]lease assume an individual of the same age, education and work experience as the claimant.  The individual can lift and/or carry ten pounds occasionally; lift and/or carry less than ten pounds frequently; stand and/or walk for about two hours and sit for up to six hours in an eight-hour workday with normal breaks; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs, balance and stoop; never kneel, crouch or crawl; overhead reaching bilaterally is occasional; reaching in all other directions is frequent; handling, fingering and feeling are continuous; foot control operation bilaterally is frequent; avoid or rather the individual can tolerate occasional exposure to extreme cold and heat and to wetness and humidity.  The individual should avoid all exposure to unprotected heights.  The individual is unable to do commercial driving.  The individual is able to do simple, routine, repetitive tasks.  Just a minute.  And occasional interaction with the public, coworkers and supervisors.  Can that hypothetical individual do the claimant's past work?

[Dkt. 9-2 at 73.]  The VE opined that Claimant could not perform his past work, but Claimant could perform work as a document preparer or as a final assembler.  *Id.* at 74.  The ALJ then asked the VE if adding "no fast paced production and no tandem tasks," and "teamwork" to the hypothetical would impact the jobs she recommended.  *Id.* at 79.  The VE answered the additional limitations would not impact the hypothetical individual's ability to perform work as a document prepare or as a final assembler.  *Id.*  The VE also stated that the individual could hold those positions even if he had one unscheduled absence per month and was off task up to ten percent of the day.  *Id.* at 76.

However, Dr. Gange, a state agency psychologist, opined the following concentration constraints in his narrative summary:

> [I]n terms of the level of severity of functioning, [claimant's] allegations appear partially consistent given [activities of daily living] appear [within normal limits], attention and concentration are moderately impacted but appear reasonable for tasks. . . . Claimant has the mental capacity to understand, remember, and follow simple instructions. . . . Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, [claimant] is able to sustain attention and concentration skills to carry out work like tasks with reasonable pace and persistence.

[Dkt. 9-4 at 64-5.]  Dr. Gange also reported concentration-related "check box" limitations indicating Claimant is moderately limited in his ability to "carry out detailed instructions," and to "maintain attention and concentration for extended periods."  *Id.* at 63.  The ALJ failed to discuss Dr. Gange's opinion or even mention his report in the hypothetical she posed to the VE or in the RFC determination.

Claimant correctly notes that the Seventh Circuit has repeatedly rejected the notion that a hypothetical "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."  [Dkt. 11 at 29.]  Claimant asserts the ALJ's RFC determination limiting him to "simple, routine, repetitive tasks" is "even more deficient than the limitations assessed by the adjudicator in *Varga*."  *Id.*;  *see Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

In *Varga*, the Seventh Circuit reversed the ALJ's decision because the ALJ did not address the claimant's moderate difficulties in concentration, persistence, or pace in the hypothetical question posed to the VE.  794 F.3d at 814.  In *Varga*, at steps two and three, the ALJ determined that the claimant had "moderate difficulties" with regard to concentration, persistence, or pace.  *Id.*  Then, in the RFC, the ALJ concluded that the claimant could perform "light work" and was limited to "simple, routine, and repetitive tasks in a work environment free

of fast paced production requirements, involving only simple, work-related decisions." *Id.* at 812-13. The court noted that the "hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace." *Id.* at 814 (emphasis in original). Further, the court stated that limiting a claimant to "simple, routine, and repetitive tasks" is "unrelated" to the question of whether a claimant with difficulties maintaining concentration, persistence, or pace can perform such work. *Id.* at 816. Therefore, the ALJ committed reversible error. *Id.* at 814.

Claimant argues that the RFC determination in *Varga* is similar to the RFC determination in this case because it states Claimant is unrestricted in his ability to "do simple, routine and repetitive tasks." [Dkt. 11 at 29.] Like in *Varga*, the ALJ limited Claimant to simple and repetitive tasks in the RFC assessment, but failed to provide her reasoning between her recitation of medical evidence and the decision. The ALJ failed to show how her decision accounted for all of Claimant's difficulties in maintaining concentration, persistence, or pace. Therefore, on remand, the ALJ must articulate the effects of Claimant's moderate limitations in maintaining concentration, persistence, or pace in Claimant's RFC determination and fully account for those limitations in the RFC and in the hypothetical questions posed to the VE.

## B.  Treating Physician's Opinion

Claimant asserts that the ALJ improperly discounted the opinion of his treating physician, Dr. Rod Robinson. Because Claimant advanced this claim before March 2017, the applicable law provides that a treating source's opinion[2] is entitled to controlling weight if it is: (1) "well-

---

[2] For claims filed after March 2017, an ALJ is not required to give special weight to the opinions of a disability applicant's treating physician. *See* 20 C.F.R. § 404.1520c. Instead, all medical opinions—from treating providers, Social Security's consultative examiners, and independent medical examiners—will be evaluated on an equal basis for "persuasiveness." The key factors a

supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with other substantial evidence."  *See* 20 C.F.R. § 404.1527(c)(2); *Burmester*, 920 F.3d at 512; *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020).  It is well established that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider "the treatment relationship, the frequency of examinations, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).  As long as the ALJ considers these factors and minimally articulates her reasons, the Court will uphold her decision not to assign controlling weight to a treating physician's opinion.  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (reasoning the ALJ must offer "good reasons" for discounting the opinion of a treating physician).  The ALJ is directed generally to give "more weight to the medical opinion of a source who has examined [claimant] than to the medical opinion of a medical source who has not examined [him]." 20 C.F.R. § 404.1527(c)(1).

The ALJ discounted Dr. Robinson's report on the grounds that it was unsupported by medical evidence and was inconsistent with Claimant's description of his daily activities.  [Dkt. 9-2 at 21 & 23.]  The ALJ stated that she gave Dr. Robinson's opinion little weight because, despite Dr. Robinson's "respective medical specialty and an examining and personally treating

---

disability adjudicator will consider in evaluating the persuasiveness of an opinion are supportability and consistency.  *See* § 404.1520c(c)(1) and (c)(2).

medical relationship" with Claimant, his "medical source statement is neither internally consistent nor is it consistent with his own treatment notes." *Id.* at 23.  The ALJ stated that Dr. Robinson's opinion is "affected by his personal relationship with the claimant suggesting the degree of objectivity is less than that of independent medical experts." *Id.*  The ALJ stated:

> Dr. Robinson writes that the constant pain and numbness are severe per the patient.  Therefore, at least in part, the limitations are per the claimant's subjective complaints.  The limitations in standing and walking, necessity of "walking around during an 8-hour working day", unscheduled breaks and necessity of elevating his legs again are not supported by his own treatment notes and unsupported by substantial evidence.  Substantial evidence supports a finding that elevating legs is not medically necessary.  Moreover, his notation of anxiety/depression as a source of constant interruption of concentration and attention and rendering the claimant incapable of even a "low-stress job" is also not consistent with his treatment notes of a stable mental condition.

*Id.*  The Court agrees with Claimant that the ALJ failed to articulate an appropriate rationale for not granting controlling weight to his treating physician's opinion.

In June 2015, Dr. Robinson noted that Claimant had "soreness and tenderness" in his left forearm and "discomfort with grabbing or gripping," and recommended orthopedic surgery to help with the pain.  [Dkt. 9-19 at 7 & 10.]  In April 2017, Dr. Robinson noted Claimant's active problems with "paresthesia and pain of left extremity" and reported that Claimant suffered from left elbow pain, swelling, and soreness.  [Dkt. 9-27 at 7-8.]  He further ordered an x-ray to determine a treatment plan.  *Id.* at 13.  In October 2017, Dr. Robinson switched Claimant to a new migraine medication because he experienced migraines "a few times per month," and again noted one of Claimant's active problems was "paresthesia and pain of left extremity."  *Id.* at 3.  Dr. Robinson reported that from February 18, 2018, Claimant was disabled and incapable of tolerating the stress of even a "low stress" job.  [Dkt. 9-30 at 42.]  Dr. Robinson opined that Claimant's pain and other severe symptoms constantly "interfere with attention and concentration needed to perform even simple work tasks."  *Id.*  Dr. Robinson noted that Claimant could only

walk one city block, and could only sit or stand for 30 minutes at a time. *Id.* Dr. Robinson

further reported that Claimant would need to elevate his legs and take unscheduled fifteen-

minute breaks every 30 to 60 minutes. *Id.* at 43. Dr. Robinson's February 2018 assessment

reported that he had treated Claimant three to four times per year for eight years, but some visits

were unrelated to Claimant's pain. *Id.* at 41. The records further indicate that at each visit after

April 2016, Claimant had active problems with "paresthesia and pain of left extremity." [*See*

Dkt. 9-21 at 2; Dkt. 9-27 at 3, 14, 25, 30; Dkt. 9-29 at 78.] Thus, contrary to the ALJ's

conclusion, Dr. Robinson consistently noted Claimant's pain, especially in his left arm, during

his visits. The ALJ stated she discounted Dr. Robinson's opinion because it is based on

Claimant's subjective complaints, but that reason alone is insufficient to discount a treating

source opinion. *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (concluding an ALJ

improperly discounted the treating physician's opinion by stating the opinion was based solely on

the claimant's subjective complaints because the ALJ ignored medical records indicating that the

claimant was consistently in pain). Thus, the ALJ failed to articulate her reasoning for

discounting Dr. Robinson's opinion. This must be corrected on remand.

   C. <u>Social Limitations</u>

      Claimant argues that the ALJ failed to account for his social limitations because the ALJ

failed to properly weigh and acknowledge the findings of Dr. Rasmussen, a consultative

examiner, which supported more restrictive social limitations in the RFC assessment. Moreover,

Claimant contends the ALJ failed to adequately explain why she assessed that Dr. Rasmussen's

opinion was unsupported and based on subjective complaints. In an April 2016 report, Dr.

Rasmussen opined Claimant's functional mental capacity:

      Remaining Functional Capacity: [Claimant's] current remaining functional mental
      capacity appears to be at least moderately impaired. His thoughts are dominated

by his physical health and what he is no longer able to do.  He has lost how he defined himself and his lifestyle.  He is aware of a constant level of intense pain. He believes that he is being followed and watched.  He is easily angered and seems to be angry most of the time.  He may have intrusive thoughts about being watched.  His thoughts became confused and slow during the cognitive tasks.  He does very little for fun and is not able to do what he used to do.  He is not able to take care of all his personal habits on his [own.]  He is not able to do most of the household chores on his own.  He denied that he has current suicidal thoughts. He has no current homicidal thoughts, but has them during road rage.  His social skills seemed fair to poor.

[Dkt. 9-20 at 66.]  The ALJ gave Dr. Rasmussen's opinion considerable weight.  [Dkt. 9-2 at 23.]

The ALJ explained that the consultative examiners "have applicable medical specialties,

specialized knowledge of the Social Security Disability program and extensive experience

performing independent, non-treating, objective medical examinations of Social Security

disability claimants."  *Id.*  The ALJ further found that Dr. Rasmussen's opinions were consistent

with the record as a whole, and that he "personally examined the claimant"; however, he "lacked

access to the longitudinal medical record the medical experts reviewed[.]"  *Id.*  However, the

ALJ expressed that Dr. Rasmussen's mental source statement does not suggest Claimant's

condition is preclusive of work, as the statement seemed to be "based upon the claimant acting as

'historian' with little or no corroborative evidence."  *Id.* at 21.  Because the ALJ discounted Dr.

Rasmussen's opinion by merely stating he acted as "historian," without expressing whether the

subjective complaints were consistent with the record, the ALJ did not provide adequate

reasoning why she did not consider his opinion in arriving at the RFC assessment, despite giving

Dr. Rasmussen's opinion "considerable weight."

Claimant also contends that the ALJ's evaluation of his social limitations was an error

because she failed to consider Dr. Gange, the state agency psychologist's, "check box"

limitations.  Specifically, Claimant argues the ALJ failed to explain why she assigned Dr.

Gange's opinion partial weight and failed to even mention Dr. Gange's findings in the

hypothetical question she posed to the VE or in the RFC determination.  Claimant asserts the ALJ's decision should have included Dr. Gange's opinion that suggested Claimant would be "prone to several inappropriate workplace behaviors as a result of his psychological impairments."  [Dkt. 11 at 21.]

Dr. Gange reported social-related "check box" limitations indicating Claimant is moderately limited in his ability to "accept instruction and respond appropriately to criticism from supervisors;" "get along with coworkers or peers without distracting them or exhibiting behavioral extremes;" "respond appropriately to changes in the work setting;" and his narrative conclusion that Claimant would be limited to only "brief, superficial interactions w/ fellow workers, supervisors and the public."  [Dkt. 9-4 at 64.]  The ALJ stated that she gave partial weight to Dr. Gange's opinion because he "ha[s] respective medical specialties, Social Security disability program expertise and extensive experience evaluating Social Security disability cases."  [Dkt. 9-2 at 23.]  The ALJ clarified, however, that Dr. Gange "lacked the opportunity to review the entire medical record including recent, hearing level, medical exhibits."  *Id.*

The Court has repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it.  *Moore*, 743 F.3d at 1123. Meaningful judicial review requires the ALJ to build a "logical and accurate bridge" between the evidence and her conclusions.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  Additionally, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."  *Varga*, 794 F.3d at 813.  Here, the ALJ failed to explain what information Dr. Gange lacked that was relevant to his conclusion

regarding Claimant's tendency toward inappropriate workplace behavior.  This also should be corrected on remand.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.


Dated:  7 JUL 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana


Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.